UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MISTY HALL, | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | 3:09-cv-1347 (CFD) |
| | : | |
| CABLEVISION OF CONNECTICUT, L.P., | : | |
|     Defendant. | : | |

## RULING ON MOTION FOR SUMMARY JUDGMENT

The plaintiff, Misty Hall, brought this action alleging employment discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. The defendant, Cablevision of Connecticut, L.P. ("Cablevision"), has filed a motion for summary judgment. For the following reasons, the Court grants Cablevision's motion for summary judgment.

## I.  Factual Background[1]

Cablevision employed Hall from December 20, 2002 until April 9, 2007 as a "Customer Relations Coordinator I" in its Stratford, Connecticut Call Center. As a Customer Relations Coordinator I, Hall was responsible for handling customer calls. Hall was responsible for following Cablevision's policies, including "delivering exceptional customer service by using positive language, having an upbeat tone, listening actively, sounding interested, identifying customer needs, offering help before being asked, and closing calls politely."

Hall suffers from a right lumber disc herniation, which causes her chronic pain in her

---

[1] The following facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

lower back. Hall has never undergone any procedures or surgeries for her back condition, however, doctors have treated her condition through physical therapy and pain medication. Hall admits that her condition does not limit her ability to drive, walk, or work, but claims that it limits her ability to "lift over a certain weight," "sit in a lean position, leaning back for very long," and "turn."

Beginning in July 2004, Hall requested and Cablevision approved two Family Medical Leave Act ("FMLA") leaves of absence and two non-FMLA leaves of absence due to her back pain.[2] After each leave of absence, Hall returned to her same position on a full-time basis, without any changes in duty or seniority. Also, upon each return to work, the medical releases from her physicians did not specify any restrictions on her ability to work or the need for any accommodations.

Hall claims that on numerous occasions she requested that Cablevision provide her with a better, more comfortable chair for her back. She never submitted to Cablevision any medical documentation in support of her request for the chair. Hall claims that Cablevision would not provide her with the chair because Cablevision did not provide preferred seating arrangements and if it gave her a new chair, "everyone would want one."[3] Hall claims that Cablevision also

---

[2] Her first FMLA approved leave of absence was from July 23, 2004 to November 14, 2004. Her second FMLA approved leave of absence began on March 24, 2006. After using all of her FMLA leave time, Hall requested, and Cablevision approved, a non-FMLA leave of absence, which continued her leave until August 9, 2006. Her third leave of absence, a non-FMLA leave of absence (because she had exhausted all of her time under the FMLA), was from October 4, 2006 to November 6, 2006. In February 2007, Hall requested an intermittent FMLA leave of absence, but Cablevision did not approve it because Hall failed to submit the required medical documentation.

[3] Hall stated in her deposition that in mid-2006 her then supervisor, Galvin Wallace, "went into a board room and got a reasonably comfortable newer chair. He would tell other

would not allow her to bring in her own chair because Cablevision could not "protect it," presumably from theft.

Soon after March 5, 2007, Hall's supervisors learned of three customer calls that they believe Hall had handled improperly on that day. Her supervisors reviewed the recordings of the calls. Amy Ferris, a Customer Service Supervisor in Cablevision's Stratford Call Center, believed Hall's behavior on the calls was "very sarcastic, nasty, rude, condescending, and unhelpful toward the customer, who was calling to inquire about paying his bill." Patti Billard, a Call Center Manager in Cablevision's Stratford Call Center, considered Hall's behavior on the calls to be "argumentative, rude, obnoxious, and condescending." During the call, Hall denied the customer's request to process his credit card payment and waive the $5.00 processing fee, and denied the customer's request to transfer the call to a supervisor or manager. Hall claims that she could not waive the $5.00 processing fee because Cablevision had reprimanded her in the past for waiving such fee. Further, Cablevision claims that Hall should have transferred the call to a supervisor. Hall claims that she had also been reprimanded in the past for transferring calls without obtaining the customer's name and contact information, and that she believed she was following Cablevision's policies by trying to obtain the customer's information before transferring the call.

Following these calls, Ferris and Billard believed Hall's employment should have been terminated immediately for violations of numerous call handling policies and practices. On March 15, 2007, Hall received a "Final Formal Reprimand" for her alleged inappropriate

---

representatives that would arrive that, you know, just leave the chair. That's Misty's assigned seat, and she has a special request. So he was pretty diligent about trying to hold my desk as much as he could."

handling of the customer's calls. The Final Formal Reprimand indicated that Plaintiff had handled the calls unprofessionally, misrepresented Cablevision's credit card processing policy, improperly failed to transfer the call at the customer's repeated request, and misrepresented her job title.[4] Hall asserts that she acted appropriately and, at all times during the calls, she followed Cablevision's policies and procedures.

On April 3, 2007, Cablevision received a customer complaint regarding another call that Hall had allegedly mishandled in January 2007. After reviewing the recording, Billard believed Hall's tone on this call was unacceptable and that she violated protocols by not transferring the call to a supervisor. Cablevision also claims that Hall failed to fulfill the customer's request for a corrected bill. Hall claims that she handled the call appropriately.

On April 9, 2007, Cablevision terminated Hall's employment. Cablevision contends that it terminated her because of her poor performance in handling the calls and for violating Cablevision's call procedures and policies. Hall contends that she was terminated because of her disability.[5]

Hall subsequently filed charges with the Equal Employment Opportunity Commission ("EEOC") on July 30, 2007, alleging a violation of the ADA. On May 28, 2009, the EEOC issued a notice of right to sue letter to Hall, and, on August 25, 2009, Hall filed this action.

---

[4] The Final Formal Reprimand stated that "it is necessary to warn you that any future violations of Cablevision's Values or violations of any other Company or departmental policy or procedure, or any unsatisfactory work performance will result in further disciplinary action, up to and including termination of your employment with Cablevision."

[5] In Hall's deposition she stated that none of her supervisors or managers at Cablevision ever discriminated against her, said anything derogatory or insensitive about persons with disabilities, or did anything to make Hall think they intended to discriminate against disabled individuals.

**II.    Discussion**

  A. Summary Judgment Standard

  In a summary judgment motion, the burden is on the moving party to establish that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the non-moving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

  In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. See Anderson, 477 U.S. at 255; Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the non-moving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150–51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178

B.  Americans with Disabilities Act[6]

The ADA prohibits discrimination in the workplace "on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Claims of discrimination under the ADA are analyzed under the burden-shifting test set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 96 (2d Cir. 2009). Under such an analysis, "[a] plaintiff must establish a prima facie case; the employer must offer through the introduction of admissible evidence a legitimate non-discriminatory reason for the discharge; and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006).

1.  Disability Discrimination Claim

"To establish a prima facie case under the ADA, a plaintiff must show . . . that: '(1) [her] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of [her] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of [her] disability.'" Id. (quoting Giordano v. City of New York, 274 F.3d 740, 747 (2d Cir. 2001)).

---

[6] The ADA Amendments Act of 2008 expressly overruled several of the decisions that this Court has relied on, including Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 198 (2002). The Act became effective as of January 1, 2009, however, and does not apply retroactively to conduct that occurred prior to the effective date of the Act. Because the disputed activity in this case occurred before April 9, 2007, prior to the effective date of the Act, the Act is not applicable to the Court's resolution of this case. See Moran v. Premier Educ. Group, LP, 599 F. Supp. 2d 263, 271–72 (D. Conn. 2009).

Cablevision argues that Hall has failed to establish a prima facie case of discrimination because she has not shown: (1) that she is disabled within the meaning of the ADA; and (2) that Cablevision terminated her because of her disability. Alternatively, Cablevision argues that if Hall has established a prima facie case, it has articulated a legitimate, non-discriminatory basis for Hall's termination—poor call handling—and Hall has not demonstrated this to be a pretext for discrimination.

The Court finds that Hall has not shown that she is disabled within the meaning of the ADA and therefore cannot establish a prima facie case of discrimination. The ADA defines "disability" as either:

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(1). Hall argues that she suffers from a physical impairment, a herniated disc in her back, that substantially limits one or more major life activities, and is therefore disabled under Subsection (A). Cablevision argues that Hall's back condition is not an actual disability under the ADA because she was not and is not substantially limited in any major life activity.

The U.S. Court of Appeals for the Second Circuit has held that District Courts should apply the three-step approach taken by the U.S. Supreme Court in Bragdon v. Abbott, 52 U.S. 624 (1998), to determine whether a plaintiff is disabled under Subsection (A). See Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 147 (2d Cir. 2002). Under this analysis, "plaintiff must first show that she suffers from a physical or mental impairment. Second, plaintiff must identify the activity claimed to be impaired and establish that it constitutes a 'major life activity.' Third,

the plaintiff must show that her impairment 'substantially limits' the major life activity previously identified." Id. (internal citations omitted).

Hall has submitted medical documentation to show that she suffers from "lower lumbar disk issues," specifically a "right lumbar disc herniation." She testified during her deposition that her back condition restricts her ability to: (1) lift over a certain, unspecified weight; (2) lean back for a long period of time; and (3) turn. She admits, however, that her back condition does not limit her ability to drive, walk, or work. The Court assumes, without deciding, that her back condition is a "physical impairment," and that lifting, sitting, and turning are major life activities under the ADA. See 42 U.S.C. § 12102(2)(A) (The statute defines major life activities as including, but not limited to, "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."). Thus, at issue is whether Hall has presented sufficient evidence to show that her back condition "substantially limits" her ability to lift, sit, and turn.

The ADA does not define "substantially limits," but the U.S. Supreme Court has found that "'substantially limits' suggests 'considerable' or 'to a large degree.'" Toyota Motor Mfg., 534 U.S. at 196. "The word 'substantial' thus clearly precludes impairments that interfere in only a minor way with the performance of manual tasks from qualifying as disabilities." Id. at 197. The relevant EEOC regulations define "substantially limits" as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as

> compared to the condition, manner, or duration under which the average
> person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). To determine whether a major life activity is substantially limited, the Court should consider the following factors: "(i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R.§ 1630.2(j)(2). The Court should compare the plaintiff's impaired ability to perform her major life activities with the "average person's ability to perform those activities." Colwell v. Suffolk Cnty. Police Dep't, 158 F.3d 635, 644 (2d Cir. 1998).

First, Hall stated in her deposition that she "cannot lift over a certain weight" and she has "to be very careful" and "lift in stages." She offers no evidence in support of these assertions, including no medical support in the record to substantiate a weight restriction. However, even if such statements are credited, courts in the Second Circuit have consistently held that moderate restrictions on an employee's ability to lift do not amount to a substantial limitation under the ADA. See Colwell, 158 F.3d at 644 (holding that plaintiff's testimony that he was able to lift "light objects," but not "very heavy objects" was insufficient to support the finding that his back condition substantially limits his ability to lift); Tomick v. United Parcel Service, Inc., Civil Action No. 3:06-cv-01660 (VLB), 2008 WL 4307109, at *4 (D. Conn. Sept. 19, 2008) ("Although a doctor restricted [plaintiff] from lifting more than 15 pounds and ordered him to minimize bending, squatting, and twisting, [plaintiff] has not provided any evidence that those restrictions" would qualify as a disability under the ADA.); Amodio v. Wild Oats Mkt., Inc., Civil Action No. 3:05CV714 (JCH), 2006 WL 2800903, at *15 (D. Conn. Sept. 28, 2006)

(holding that even though plaintiff could not do any "heavy lifting," she did not provide sufficient evidence to show that she was substantially limited in her major life activity of lifting); Banks v. Potter, 253 F. Supp. 2d 335, 347–48 (D. Conn. 2003) (finding that plaintiff has not created a genuine issue of material fact that he was substantially limited in the activities of lifting or carrying even though he could not raise his arms above his shoulders or lift in excess of thirty pounds); Piazcyk v. City of New Haven, 64 F. Supp. 2d 19, 29–31 (D. Conn. 1999) (finding that a doctor's statement that plaintiff could only lift up to fifteen pounds did not support a finding of a "substantial limitation"). Thus, Hall has failed to produce sufficient evidence to establish a substantial limitation on her major life activity of lifting.

Second, Hall claims that she could not "sit in a lean position," *i.e.*, "lean back for very long." This evidence is also insufficient to show that her back condition substantially limits her ability to sit. See Colwell, 158 F.3d at 644 (holding that an individual is not substantially limited in a major life activity where he cannot "sit too long" and that "prolonged sitting is a problem at work"); Banks, 253 F. Supp. 2d at 348 (finding that Banks' restricted ability to sit for over four hours a day does not amount to a substantial limitation in the major life activity of sitting); Piazcyk, 64 F. Supp. 2d at 29 (finding that plaintiff's testimony that he could not sit for "long periods of time," sometimes not longer than fifteen or twenty minutes, at other times not longer than two hours was too vague to establish a "substantial limitation"). Here, Hall does not claim that she could not sit for a certain period of time; rather, she claims that she could not sit in a leaning back position for very long. The Court concludes that Hall's restricted ability to lean back while sitting does not amount to a substantial limitation in the major life activity of sitting.

Third, Hall claims that she is limited in her ability to "turn." Hall has not submitted any

supporting evidence to explain the duration or extent of this restriction. Accordingly, this conclusory assertion, without more, is too vague and insufficient to establish a substantial limitation. See Banks, 253 F. Supp. 2d at 348 (holding that plaintiff's testimony that he could not turn his head without turning his entire body was not enough to create a genuine issue of material fact that he was substantially limited in the activity of turning his head); Young v. Precision Metal Prods., Inc., 599 F. Supp. 2d 216, 226 (D. Conn. 2009) (holding that plaintiff's testimony about his use of caution while bending and turning is not enough to satisfy the ADA threshold of demonstrating a substantial limitation on working).

Further, to the extent that Hall attempts to argue that her back condition has restricted her ability to work because it has required her to take many leaves of absence, her own testimony and medical documentation prove otherwise. Hall testified in her deposition that she is *not* limited in her ability to work. "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs, not simply a particular job." Schapiro v. N.Y. City Dep't of Health, 25 F. App'x 57, 61 (2d Cir. 2001) (quoting Sutton v. United Air Lines, 527 U.S. 471, 491 (1999)); see also 29 C.F.R. § 1630.2(j)(3) ("With respect to the major life activity of *working*, (i) [t]he term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."). Hall has not offered any evidence to show she is, or ever was, significantly restricted in the ability to either perform her job at Cablevision or a broad range of jobs. Although Hall has provided some evidence to show that she may be temporarily limited in her ability to work at Cablevision, she has not shown that she

is permanently or substantially limited in this major life activity. Such, "[t]emporary limitations do not warrant protection under the ADA." Young, 599 F. Supp. 2d at 226. Moreover, Hall's medical releases to return to work after each leave of absence did not indicate any restrictions or limitations on her ability to work, and each time she returned to her same position at Cablevision. See Stronkowski v. St. Vicent's Med. Ctr., Civil No. 3:94CV2175 (AHN), 1996 U.S. Dist. LEXIS 22304, at *15–17 (D. Conn. Aug. 1, 1996) (holding that plaintiff's back condition, which temporarily required her to work part-time and undergo physical therapy, did not substantially limit her ability to work).

Hall cannot establish that she is "disabled" within the meaning of the ADA because she has presented no evidence that she is "substantially limited" in her ability to lift, sit, turn, or work.[7] Thus, Hall has failed to set forth a prima facie case of disability discrimination under the ADA.[8]

Even if the Court found that Hall had established a prima facie case, Cablevision has articulated a legitimate, non-discriminatory reason for her termination—poor performance in call

---

[7] Plaintiff has not alleged or testified that she has "a record" of a physical impairment that substantially limits a major life activity or "is regarded as having such an impairment." Even if the Court construes Hall's FMLA medical documentation as an attempt to demonstrate "a record" of physical impairment, she has not shown that her impairment substantially limits a major life activity. See 29 C.F.R. § 1630.2(k) ("The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities."); Passanisi v. Berkley Adm'rs of Conn., Inc., Civil No. 3:06cv313 (PCD), 2007 U.S. Dist. LEXIS 19037, at *20 n.8 (D. Conn. Mar. 19, 2007) ("Courts analyze 'actual' disability claims and 'record of' disability claims in the same manner when there is no evidence that a plaintiff's impairment actually impaired any major life activity.").

[8] Because the Court has concluded that Hall cannot establish that she is "disabled" within the meaning of the ADA, the Court need not address the question of whether she was terminated because of her disability.

handling—and Hall has not demonstrated that this is a pretext for disability discrimination.

### 2. Failure to Accommodate Claim

As an alternate theory of disability discrimination, Hall argues that she can establish a prima facie case because instead of suffering an adverse employment action, Cablevision failed to accommodate the needs created by her disability. In order to establish a prima facie case for failure to reasonably accommodate, a plaintiff must show that: "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." McBride, 583 F.3d at 97 (citations omitted). Because, as set forth above, the Court finds that Hall does not have a disability within the meaning of the ADA, she cannot make out a prima facie case for disability discrimination under the theory of Cablevision's failure to accommodate. See Farina v. Branford Bd. of Educ., Civil Action No. 3:09-cv-49 (JCH), 2010 U.S. Dist. LEXIS 99730, at *49–50 (D. Conn. Sept. 23, 2010); Dicara v. Conn. Rivers Council, Boys Scouts of Am., 663 F. Supp. 2d 85, 93–94 (D. Conn. 2009).

### III. Conclusion

Accordingly, the defendant's motion for summary judgment [Dkt. # 35] is GRANTED. The Clerk is ordered to close this case.

SO ORDERED this  11th  day of October 2011, at Hartford, Connecticut.

 /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**